# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROGER L. BROWN,<br><br>Defendant. | Case No. 1:19-po-00016-SAB<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS PROBATION VIOLATION PETITION<br><br>(ECF Nos. 51, 53, 56, 67, 68, 70) |

## I.

## INTRODUCTION

Currently before the Court is Defendant Roger L. Brown's ("Brown" or "Defendant") motion for an order dismissing the Plaintiff United States of America's (the "Government") petition for violation of probation, brought pursuant to Federal Rule of Criminal Procedure 12(b); Eastern District of California Local Rule 430.1; 18 U.S.C. § 3565(c); and other statutory and constitutional rules as applicable.   (ECF No. 51.)   Having considered the moving, opposition, and reply papers, the parties' supplemental briefing, the arguments presented at the April 28, 2022 hearing, the June 16, 2022 hearing, as well as the Court's file, Defendant's motion to dismiss the petition for violation of probation shall be denied.

/ / /

/ / /

1

## II.

## BACKGROUND

On January 16, 2020, Defendant pled guilty to a single count of possession of a controlled substance, in violation of 50 C.F.R. §27.82(b)(2); 16 U.S.C. 668 (dd)(f)(2).  (ECF No. 12.)  On the same date, the Court sentenced Defendant to one year of unsupervised probation with the conditions that he pay a financial penalty, participate in an inpatient drug treatment program, and obey all laws.  (ECF No. 12.)  The term of probation was originally set to expire on January 15, 2021, and Defendant was initially ordered to personally appear for a probation review hearing November 19, 2020.  (Id.)  Pursuant to the request of the parties, the Court extended Defendant's term of probation to May 31, 2021, and authorized him to participate in outpatient drug treatment in lieu of an inpatient program.  (ECF Nos. 15, 17, 18, 19, 21, 22, 26, 27, 33, 34.)  A probation review hearing was set for May 20, 2021.  (ECF Nos. 34, 36.)

During the May 20, 2021 review hearing, the Court issued a warrant for Defendant's failure to appear.  (ECF Nos. 37, 38.)  Defendant proffers that on June 8, 2021, he placed himself back on the Court's calendar with the help of counsel.  At the next hearing, on June 17, 2021, Defendant appeared via telephone, and the Court recalled the warrant and referred the matter to the U.S. Probation Office for review.  (ECF No. 39.)  The Court set a status hearing for July 15, 2021.  (Id.)

On July 2, 2021, the Court ordered a warrant issue, to be held until July 15, 2021, based on a petition for violation of probation, alleging that Mr. Brown violated the terms of his probation by failing: (1) to pay his financial obligation by March 30, 2020; (2) to appear in Court for a review hearing on May 20, 2021; (3) to obey all laws as he was arrested for evading a peace officer and for possession of a controlled substance; and (4) to provide proof of completion of substance abuse treatment as ordered by the Court.  (ECF No. 40.)  The order was filed on the docket on July 6, 2021.  (Id.)  An arrest warrant issued on July 6, 2021.  (ECF No. 41.)

On July 15, 2021, Defendant appeared for an initial appearance on the violation petition, and the arrest warrant was recalled.  (ECF No. 43.)  Following continuances, on December 7, 2021, Defendant filed the motion to dismiss probation violation petition that is currently before

1   the Court.  (Def.'s Mot. Dismiss ("Mot."), ECF No. 51.)  On January 7, 2022, the Government

2   filed an opposition brief.  (Govt. Opp'n Br. ("Opp'n"), ECF No. 53.)  On January 14, 2022, the

3   Court granted a stipulated continuance and extension of the briefing schedule.  (ECF No. 55.)

4   On February 10, 2022, Defendant filed a reply brief.  (Def.'s Reply Br. ("Reply"), ECF No. 56.)

5   On February 11, 2022, a transcript of the proceedings held on May 20, 2021, was filed with the

6   Court.  (ECF No. 58.)  A status conference was held on February 17, 2022, and oral argument on

7   the instant motion was continued until February 22, 2022.  (ECF No. 60.)  On February 18, 2022,

8   the Court continued the oral argument until April 28, 2022, and ordered supplemental briefing to

9   be filed on or before April 14, 2022.  (ECF No. 63.)  On April 11, 2022, a transcript of the

10  proceedings held on June 17, 2021, was filed with the Court.  (ECF No. 65.)  On April 14, 2022,

11  Defendant filed a supplemental brief.  (Def.'s Suppl. Br. ("Def.'s Suppl."), ECF No. 67.)  On the

12  same date, the Government filed a supplemental brief.  (Govt.'s Suppl. Br. ("Govt. Suppl."),

13  ECF No. 68.)

14          On April 28, 2022, the Court held a status conference and hearing on the motion to

15  dismiss.  (ECF No. 69.)  The Court ordered Defendant's final supplemental briefing to be filed

16  on or before May 13, 2022, and the Government's final supplemental briefing to be filed on or

17  before May 27, 2022.[1]  The Defendant filed a supplement on May 13, 2022.  (Def.'s Suppl. Br.

18  ("Def.'s 2nd Suppl.", ECF No. 70.)  The Government did not file any further supplement by the

19  May 27, 2022 deadline.

20          On June 16, 2022, the Court held a final hearing on the Defendant's motion to dismiss.

21  (ECF No. 71.)  Jaya Gupta appeared on behalf of Defendant, and Jeffrey Spivak appeared on

22  behalf of the Government.  The matter was taken under submission, and the status conference on

23  the violation petition hearing was continued to September 15, 2022.  (ECF No. 71.)

24                                              **III.**

25                                      **LEGAL STANDARD**

26          A district court may sentence a defendant to probation pursuant to 18 U.S.C. § 3561.

27  _____

28  [1]  The docket entry mistakenly states that the Government's brief was due on May 21, 2022, however, the deadline
    was set for May 27, 2022 at the April 28, 2022 hearing.  (ECF No. 69.)

1  Under 18 U.S.C. § 3565(c), the Court retains power to revoke probation and impose another

2  sentence after a probationary period ends only if a warrant or summons, based on sworn

3  allegation of a violation of probation, is issued before the end of the probationary period.  See

4  United States v. Pocklington, 792 F.3d 1036, 1039 (9th Cir. 2015) ("Pocklington").  The statute

5  provides:

6          **(c) Delayed revocation.**--The power of the court to revoke a
        sentence of probation for violation of a condition of probation, and

7          to impose another sentence, extends beyond the expiration of the
        term of probation for any period reasonably necessary for the

8          adjudication of matters arising before its expiration if, prior to its
        expiration, a warrant or summons has been issued on the basis of

9          an allegation of such a violation.

10  18 U.S.C. § 3565(c).

11  **IV.**

12  **DISCUSSION**

13        Defendant filed the motion to dismiss arguing dismissal is proper because this Court lacks

14  jurisdiction to revoke Defendant's term of probation because it did not issue a warrant or summons

15  prior to the expiration of that term, as governed by 18 U.S.C. § 3565(c).  (ECF No. 51.)  The

16  Government's opposition then primarily responded on the basis the fugitive tolling doctrine extended

17  the period of probation, and alternatively suggested the May 21, 2021 bench warrant may have

18  satisfied § 3565(c).  Thereafter, the parties focused supplemental briefing on the question of whether

19  the bench warrant issued on May 21, 2021, was sufficient under § 3565(c) to qualify as a warrant for

20  purposes of § 3565 and the requirements expressed by the Ninth Circuit in Pocklington.  Defendant

21  also maintains the fugitive tolling doctrine is no longer valid law.  As the question regarding the May

22  21, 2021 warrant can potentially be resolved without determining whether the fugitive tolling

23  doctrine is still good law, the Court first addresses the May 21, 2022 warrant.

24      **A.**    **The May 21, 2022 Warrant Satisfies the Requirements of 18 U.S.C. § 3565(c)**

25        Defendant submits the May 21, 2021 bench warrant was not issued on the basis of sworn

26  allegations that Brown had violated a condition of his probation, and therefore it did not meet

27  two of the three requirements under § 3565(c) and was not sufficient to extend the Court's

28  jurisdiction to revoke Defendant's probation.

1    "§ 3565(c) is jurisdictional and [] when Congress used the words 'warrant or summons,'

2    it meant them." Pocklington, 792 F.3d at 1037. "Close enough doesn't fly under the statute

3    [and] [i]f the government suspects wrongdoing and wants to extend the probation period, §

4    3565(c) provides easy-to-follow instructions: get a warrant or summons before the probation

5    expires." Id. ("Because the government did not do so, the district court lacked jurisdiction to

6    extend Peter Pocklington's probation beyond its termination date.").

7    Defendant directs the Court to Vargas-Amaya. There, the Ninth Circuit looked at the

8    requirements of 8 U.S.C. § 3583(i), a statute largely similar to Section 3565(c) in its

9    requirements for the issuance of a warrant or summons regarding a violation of supervised

10   release. The Ninth Circuit emphasized the nearly identical language in Section 3583(i):

> The power of the court to revoke a term of supervised release for
> violation of a condition of supervised release, and to order the
> defendant to serve a term of imprisonment and, subject to the
> limitations in subsection (h), a further term of supervised release,
> extends beyond the expiration of the term of supervised release for
> any period reasonably necessary for the adjudication of matters
> arising before its expiration *if, before its expiration, a warrant or
> summons has been issued on the basis of an allegation of such a
> violation.*

16   United States v. Vargas-Amaya, 389 F.3d 901, 903 (9th Cir. 2004) (quoting 18 U.S.C. § 3583)

17   (emphasis added by quoting source).

18   The Ninth Circuit held the italicized portion of § 3583(i) requires "that: (1) a warrant or

19   summons, (2) issue before the expiration of a term of supervised release, (3) on the basis of an

20   allegation of a violation of supervised release." Vargas-Amaya, 389 F.3d at 903. The Ninth

21   Circuit stated "in order to avoid any constitutional problems with § 3583(i), we construe it to

22   mean that not all warrants or summonses will extend the district court's jurisdiction to revoke

23   supervised release. Instead, the warrant issued must have been based upon sworn allegations that

24   the person violated a condition of supervised release." Id. at 906. "[T]hat the warrant must

25   allege a violation of supervised release is a requirement for jurisdiction; in other words, the

26   warrant cannot allege something less than a violation of supervised release." Id. at 905; see also

27   Pocklington, 792 F.3d at 1039-40 ("The unmistakable language of § 3565(c)—defining the

28   *power of the court* to revoke a sentence of probation—could hardly speak more clearly to the

1  district court's jurisdiction-defining *power* to adjudicate the case . . . [i]n the same vein, we

2  described identical language in the companion provision dealing with supervised release, *see* §

3  3583(i), as extend[ing] the jurisdiction of the federal court.") (internal quotations and citations

4  omitted) (alteration and emphasis in original).  In Herndon, this Court extended Vargas-Amaya's

5  holding regarding warrants under 3583(i) to a summons.  United States v. Herndon, 546 F. Supp.

6  2d 854, 857 (E.D. Cal. 2008) ("[T]his court finds the reasoning of *Vargas-Amaya* equally

7  applicable to the summons in this context . . . these rules demonstrate that generally a summons

8  must also be supported by allegations sworn under oath.").

9       Here, Defendant argues, like in Vargas-Amaya, the May 21, 2021 bench warrant was not

10  issued on the basis of sworn allegations that he had violated a condition of his probation.

11  Defendant submits the warrant was not even issued based on *unsworn* allegations of a probation

12  violation as was the issue in Vargas-Amaya.  Rather, Defendant emphasizes the warrant was

13  issued by the Court *sua sponte*, and was not based on allegations of a probation violation.  (See

14  Ex. A, May 20, 2021 Tr. at 2:14-16, ECF No. 67-1 at 3) ("The defendant has failed to appear,

15  and a warrant for his arrest will be issued, all right, for his failure to appear.").  Defendant further

16  emphasizes that at the May 20, 2021 hearing, the Court did not state the warrant would be issued

17  on the basis of an allegation of a probation violation, nor did the Government or the Probation

18  Office allege a violation of Defendant's probation conditions prompting the Court to issue the

19  warrant, and the Court did not order the matter referred to the Probation Office on May 20, 2021

20  for a determination of whether a violation had in fact occurred.

21       As to the actual document, Defendant highlights the warrant does not indicate that it was

22  issued "on the basis of an allegation of such a [probation] violation," and instead, the reason

23  provided in the "Reason for Warrant" section is "18 USC 3146" "Failure to Appear," which

24  Defendant submits would be a new offense, not an allegation of a probation violation.

25  Defendant further contends the Court's later statements and actions confirm that the warrant was

26  not issued on the basis of an allegation of a probation violation, as after Defendant appeared for

27  his next appearance on June 17, 2021, the Court recalled the May 21 warrant and stated: "and

28  now we're back to the original state of the probation review hearing[.]"  (See Ex. B, June 17,

1    2021 Tr. at 2:15-17.)  During that hearing, the Government asked the Court to refer the matter to

2    the Probation Office to determine if a violation of probation conditions had occurred, which the

3    Court agreed to do.  (Id. at 3:11-14; 4:11-15.)  Thus, Defendant submits that if the May 21

4    warrant was truly issued on the basis of an allegation of a probation violation, then the Court

5    would not have recalled it on June 17, 2021, referred the matter to the Probation Office for

6    investigation that same day, or issued a second warrant on the basis of violations alleged by the

7    Probation Office under oath on July 2, 2021.

8           As highlighted by Defendant, in Pocklington, the Ninth Circuit considered whether the

9    Probation Office's request to extend probation to investigate possible violations, and separately

10   whether the district court's order to show cause issued in response satisfied the requirements of §

11   3565(c).  792 F.3d at 1040-41.  It found neither was sufficient.  Id.  The Ninth Circuit stated

12   "[t]he Probation Office's *request* to extend probation issued October 18, 2012 can hardly be

13   classified as a warrant because the Probation Office lacks the power to issue one."  Id. (emphasis

14   in original).

15          Thus, the Ninth Circuit focused first on the fact that this was not a warrant.  The Court

16   notes that in rejecting the first proffer, the Ninth Circuit stated the "Probation Office was crystal

17   clear about the absence of anything resembling probable cause," that the office "first stated

18   unequivocally that Pocklington had not violated his probation and then, upon prodding by the

19   district court and an FBI review, confirmed that it 'did not see any obvious violations of Mr.

20   Pocklington's Probation.' "  Id.  The Ninth Circuit found "[t]he ultimate request for more time to

21   'determine if any additional information can be discovered regarding possible violations'

22   expressed, at most, the aspiration that wrongdoing might be uncovered at some unknown future

23   date."  Id. at 1041.

24          In Pocklington, the Ninth Circuit further held the "district court's response to the

25   Probation Office—a one-sentence handwritten note for an 'order to show cause hearing'—has

26   none of the indicia of a warrant [and] [r]ather than confirming the existence of probable cause,

27   that note simply contemplated giving the Probation Office extra time to 'determine if there are

28   any violations of Probation.' "  Id. at 1041.  Accordingly, because neither of these actions met

1    the requirements of the Fourth Amendment's Warrant clause as applied to 3565(c), which

2    requires "sworn allegations that the person violated a condition of supervised release or

3    probation," the Ninth Circuit reversed the revocation of the defendant's probation and imposition

4    of a sentence.  Id. at 1040-41.

5        Although informative, the Court does not find the holding in Pocklington, and the facts

6    surrounding the Probation Office's request and the court's order to show cause, directly

7    applicable to the actual warrant issued here.  In Pocklington, there was no warrant or summons,

8    and the Ninth Circuit stated "[c]lose enough" is not enough, and if the Government "wants to

9    extend the probation period, § 3565(c) provides easy-to-follow instructions: get a warrant or

10   summons before the probation expires."  Id. at 1037.  The Court does not find it need to

11   determine whether the warrant here was "[c]lose enough" to the definition of a warrant.  Here a

12   warrant was issued, and the Court need not determine whether it was a "functional equivalent" of

13   a warrant, like a request from a probation officer or an order to show cause.  See Pocklington,

14   792 F.3d at 1041 ("The government's argument that § 3565(c) permits the extension of probation

15   any time a court issues the 'functional equivalent' of a warrant falls flat.  This approach would

16   require us to ignore the provision's plain language—a cardinal sin of statutory interpretation.

17   We decline to read words into a statute that are not there.  Congress pegged jurisdiction to the

18   issuance of a "warrant" or "summons"—not the *functional equivalent* of a warrant or

19   summons.") (internal quotations omitted and original emphasis).

20       While a "warrant" was issued, the question becomes one of whether the bench warrant

21   satisfies the requirements of Section 3565(c).  Given this was a bench warrant issued by the

22   Court based on the Court's observation that the Defendant did not appear, the Court now turns to

23   the question of whether the Ninth Circuit's language stating the warrant must be based upon

24   sworn allegations that the person violated a condition of probation equates to the bench warrant

25   here being improper under §3565(c).  See Pocklington, 792 F.3d at 1040-41; Vargas-Amaya, 389

26   F.3d at 905-906.

27       The Court agrees with the Government that Vargas-Amaya is distinguishable for a

28   principal reason: the supervised violation petition there was not premised on a failure to appear

before the court.  See United States' Answering Brief, United States v. Vargas-Amaya, No. 03-50577, 2004 WL 5469208 (9th Cir. March 15, 2004) (indicating that the allegations were for defendant's failure to submit to urinalysis and failure to submit reports).  In contrast here, the sole and only probation violation allegation for the bench warrant was that Defendant failed to appear for court.  Thus, as to the bench warrant, the Court finds it did allege a violation of probation, as a failure to appear was in fact a violation of the Defendant's probation.  The Court therefore finds the warrant does not allege something less than a violation of probation.  See Vargas-Amaya, 389 F.3d at 905 ("[T]hat the warrant must allege a violation of supervised release is a requirement for jurisdiction; in other words, the warrant cannot allege something less than a violation of supervised release.").[2]

The Court finds the bench warrant complies with the Fourth Amendment.  The Fourth Amendment of the United States Constitution provides, in part, that "no warrants shall issue, but upon probable cause, supported by oath or affirmation."  See also Payton v. New York, 445 U.S. 573, 582 n.17 (1980) ("At the core of the Fourth Amendment, whether in the context of a search or an arrest, is the fundamental concept that any governmental intrusion into an individual's home or expectation of privacy must be strictly circumscribed . . . [and] [t]o achieve that end, the framers of the amendment interposed the warrant requirement between the public and the police, reflecting their conviction that the decision to enter a dwelling should not rest with the officer in the field, but rather with a detached and disinterested Magistrate.").

"Our precedent is clear: A warrant must comply with the Fourth Amendment . . . [h]ence, a warrant 'must have been based upon sworn allegations that the person violated a condition of' supervised release or probation; it 'cannot allege something less than' such a violation." Pocklington, 792 F.3d at 1040 (quoting Vargas–Amaya, 389 F.3d at 905–06).  The Ninth Circuit has discussed what an oath or affirmation means in the context of the Fourth Amendment's

/ / /

---

[2]  As for Defendant's argument that the reason provided in the "Reason for Warrant" section is a new offense, not an allegation of a probation violation, the Court does not find this changes the analysis.  Just because an offense may constitutes a new offense under a separate statute, does not mean that the warrant alleges something less than a probation violation.  The warrant alleges Defendant failed to appear, which is in fact a probation violation, not something less.

1   probable cause standard:

> An " ' "Oath or affirmation" is a formal assertion of, or attestation to, the truth of what has been, or is to be, said.' " *United States v. Brooks,* 285 F.3d 1102, 1105 (8th Cir.2002) (quoting *United States v. Turner,* 558 F.2d 46, 50 (2d Cir.1977)). *Black's Law Dictionary* 1099 (7th ed.1999), defines an oath as a "solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true." Black's defines an affirmation as a "pledge equivalent to an oath but without reference to a supreme being or to 'swearing.' " *Id.* at 50; *see also Brooks,* 285 F.3d at 1105 (reciting these definitions). " '[E]ither type of pledge may subject the person making it to the penalties for perjury.' " *Id.* at 1105 (quoting *Turner,* 558 F.2d at 50).
> The question whether a statement is made under oath or affirmation turns on whether the declarant expressed the fact that he or she is impressed with the solemnity and importance of his or her words and of the promise to be truthful, in moral, religious, or legal terms.

12   <u>United States v. Bueno-Vargas</u>, 383 F.3d 1104, 1110 (9th Cir. 2004).  While a plain reading of

13   the text could imply a declarant separate from a neutral and detached judge must assert the claim

14   of a probation violation under oath, Ninth Circuit and other federal law indicates that this is not

15   required for a bench warrant for failure to appear, in order to comply with the Fourth

16   Amendment generally.  The Court finds the holdings are reasonably extended to the bench

17   warrant issued here for Defendant's failure to appear for the May 20, 2021 hearing.  <u>See, e.g.,</u>

18   <u>United States v. Gooch</u>, 506 F.3d 1156 (9th Cir. 2007).

19       In <u>Gooch</u>, the Ninth Circuit, following the Second Circuit's guidance, held "that a valid

20   arrest warrant issued by a neutral magistrate judge, including a properly issued bench warrant for

21   failure to appear, carries with it the *limited* authority to enter a residence in order to effectuate the

22   arrest as provided for under *Payton*."  <u>Gooch</u>, 506 F.3d at 1159 (citing <u>United States v. Spencer</u>,

23   684 F.2d 220, 223 (2d Cir. 1982) ("Thus, the presence of the police in the defendant's room was

24   pursuant to a direction made by a neutral magistrate. Defendant's rights under the Fourth

25   Amendment require no more.")).[3]  The Ninth Circuit clarified that "[i]n order to enter a residence

26   to execute an arrest warrant the police must still have probable cause to believe the suspect is

27   _____

28   [3]  The Court notes the Government omitted the word "limited" from the quoted text of <u>Gooch</u>, in the briefing.  (ECF No. 68 at 2.)

1    within the residence." Id. at 1159 n.2 (citing United States v. Gorman, 314 F.3d 1105, 1110–11

2    (9th Cir.2002)).   The phrase "traditional sense" is borrowed from the Second Circuit, which

3    stated: "We recognize that its issuance did not amount to a judicial finding of probable cause to

4    arrest in the traditional sense.... Nonetheless, the police, armed with the warrant, had authority to

5    find and seize [the defendant] anywhere they could find him for his failure to appear in court."

6    Id. at 1159 (quoting Spencer, 684 F.2d at 223).

7         The Ninth Circuit noted that the holding in Spencer, "permitting entry into a residence

8    based on a misdemeanor arrest warrant or a bench warrant for failure to appear, has been

9    followed in similar cases with near uniformity by the federal courts."   Id. at 1159 n.1 (citing

10   Shreve v. Jessamine County Fiscal Court, 453 F.3d 681, 689 (6th Cir. 2006); United States v.

11   Clayton, 210 F.3d 841, 843–44 (8th Cir.2000); Cogswell v. County of Suffolk Deputy Sheriff's

12   Dept., 375 F.Supp.2d 182, 187–88 (E.D.N.Y. 2005); United States v. Ray, 199 F.Supp.2d 1104,

13   1112–13 (D. Kan. 2002); Smith v. Tolley, 960 F.Supp. 977, 991–92 (E.D. Va. 1997); Heine v.

14   Connelly, 644 F.Supp. 1508, 1514–15 (D. Del. 1986)).

15        The Court finds additional recent support from the Third Circuit.   See Johnson v.

16   Provenzano, 646 F. App'x 279, 281–82 (3d Cir. 2016); In re Grand Jury Proceedings Harrisburg

17   Grand Jury 79–1, 658 F.2d 211, 214 (3d Cir.1981) ("He failed to appear for his traffic summons

18   and a court issued a bench warrant for his arrest.   Johnson was detained pursuant to that warrant.

19   It is irrelevant whether Johnson could be arrested simply because a vehicle he owned was

20   involved in an accident—'[t]he simple fact of nonappearance [for his summons] provided ...

21   probable cause ... for a bench warrant[,]' [and] [a]ccordingly, probable cause existed for

22   Johnson's arrest, and there was no Fourth Amendment violation."); Lear v. Phoenixville Police

23   Dep't, No. CV 16-1338, 2017 WL 1805964, at *5 (E.D. Pa. May 5, 2017) ("Here, Hyland

24   arrested Plaintiff pursuant to a bench warrant issued by the court.   Like the plaintiff

25   in *Provenzano*, Plaintiff failed to appear for his traffic summons.   The court then issued a bench

26   warrant for Plaintiff.   Hyland had probable cause to arrest Plaintiff pursuant to the bench

27   warrant."), aff'd, 734 F. App'x 809 (3d Cir. 2018); see also Luckes v. Cnty. of Hennepin, Minn.,

28   415 F.3d 936, 937, 939 (8th Cir. 2005) ("Because Luckes was named in a valid bench warrant,

1  however, probable cause for his arrest pursuant to that warrant was established, and his Fourth

2  Amendment argument is thus without merit.").

3          Defendant asserts that given separation of powers concerns, and the due process clause of

4  the Fifth Amendment, it is not the province of the federal courts to make allegations or be

5  involved in the accusatory process.  Shadwick v. City of Tampa, 407 U.S. 345, 350 (1972) ("The

6  warrant traditionally has represented an independent assurance that a search and arrest will not

7  proceed without probable cause to believe that a crime has been committed…Thus an issuing

8  magistrate must meet two tests.  He must be neutral and detached, and he must be capable of

9  determining whether probable cause exists for the requested arrest or search.  This Court has

10  long insisted that inferences of probable cause be drawn by a neutral and detached magistrate

11  instead of being judged by the officer engaged in the often competitive enterprise of ferreting out

12  crime.").

13          Defendant cites In re Murchison, 349 U.S. 133, 137 (1955), for the proposition that it

14  held it was a violation of due process to have the same judge who had accused witnesses of

15  perjury and criminal contempt preside at a contempt hearing where he adjudged witnesses in

16  contempt for their conduct.  (ECF No. 67 at 6.)  Therein:

17
18
19
20
21
22
23
24
25
> The petitioners, Murchison and White, were called as witnesses before a 'one-man judge-grand jury.' Murchison, a Detroit policeman, was interrogated at length in the judge's secret hearings where questions were asked him about suspected gambling in Detroit and bribery of policemen. His answers left the judge persuaded that he had committed perjury, particularly in view of other evidence before the 'judge-grand jury.' The judge then charged Murchison with perjury and ordered him to appear and show cause why he should not be punished for criminal contempt. White, the other petitioner, was also summoned to appear as a witness in the same 'one-man grand jury' hearing. Asked numerous questions about gambling and bribery, he refused to answer on the ground that he was entitled under Michigan law to have counsel present with him. The 'judge-grand jury' charged White with contempt and ordered him to appear and show cause. The judge who had been the 'grand jury' then tried both petitioners in open court, convicted and sentenced them for contempt.

26  In re Murchison, 349 U.S. at 134–35.   The Supreme Court found this offensive to the

27  Constitution:

28
> It would be very strange if our system of law permitted a judge to

act as a grand jury and then try the very persons accused as a result of his investigations. Perhaps no State has ever forced a defendant to accept grand jurors as proper trial jurors to pass on charges growing out of their hearings. A single 'judge-grand jury' is even more a part of the accusatory process than an ordinary lay grand juror. Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused. While he would not likely have all the zeal of a prosecutor, it can certainly not be said that he would have none of that zeal. Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer. It is true that contempt committed in a trial courtroom can under some circumstances be punished summarily by the trial judge. See Cooke v. United States, 267 U.S. 517, 539, 45 S.Ct. 390, 395, 396, 69 L.Ed. 767. But adjudication by a trial judge of a contempt committed in his immediate presence in open court cannot be likened to the proceedings here. For we held in the Oliver case (333 U.S. 257, 68 S.Ct. 501) that a person charged with contempt before a 'one-man grand jury' could not be summarily tried.

In re Murchison, 349 U.S. at 137 (footnotes omitted). The full context of the Supreme Court's discussion clarifies the parameters of the admonition.

The Court does not find the warrant here to be offensive to the principles pronounced in these cases. See In re Murchison, 349 U.S. at 137; Shadwick, 407 U.S. at 350. A bench warrant for failure to appear does not equate to a judge not being neutral and detached from the branch of government that is responsible for prosecuting crime. See Gooch, 506 F.3d 1156; Spencer, 684 F.2d at 223; Provenzano, 646 F. App'x at 281–82.[4]

The Court concludes the language of the statute has been complied with, in that it requires a warrant be "issued on the basis of such a [probation] violation." 18 U.S.C. § 3565(c). The warrant was issued on the basis of a failure to appear, in violation of the probation condition

---

[4] The Government argues Defendant's positions fail as the United States Probation Office in the Eastern District of California, an arm of the judicial branch, handles most, if not all, of the making of "allegations" and arguments in the "accusatory process" in probation and supervised release violation matters in this District. The Government submits that "[c]ertainly the District's entire system for adjudicating probation and supervised release matters cannot be illegal," and had Defendant's probation violation been assigned to a probation officer, as Defendant urges should have occurred, any petition would have been presented back to the same magistrate judge for issuance of the warrant, and the matter would have been assigned back to the same magistrate judge for adjudication. Further, the Government emphasizes the Defendant fails to cite any authority that such process would have been unlawful; and finally, to the extent the Defendant's argument is rooted in the Fourth Amendment, the Government argues Defendant fails to articulate how adding a probation officer (or other affiant) to swear to facts the Court had personally observed, and which the affiant had not observed, adds any constitutional protection for a federal probationer. The Court finds these arguments add practical and legal support for the Court's conclusions.

that he appear personally.   The Court also finds the warrant satisfies the Ninth Circuit's enunciations when it applied the requirements of the Fourth Amendment to Section 3565(c): "Our precedent is clear: A warrant must comply with the Fourth Amendment . . . [h]ence, a warrant 'must have been based upon sworn allegations that the person violated a condition of' supervised release or probation; it 'cannot allege something less than' such a violation." Pocklington, 792 F.3d at 1040 (quoting Vargas–Amaya, 389 F.3d at 905–06).  This conclusion is supported by the fact that in Gooch and related cases, bench warrants for failure to appear did not offend the Fourth Amendment's requirement of probable cause based on oath or affirmation. See Gooch, 506 F.3d 1156; Spencer, 684 F.2d at 223; Provenzano, 646 F. App'x at 281–82.  So too, the May 21, 2021 warrant for failure to appear here would not offend § 3565(c), at least where the failure to appear is indeed a violation of a condition of the probation.

Thus, the May 21, 2021 bench warrant was a warrant that alleged a violation of probation that was issued before the expiration of the term of probation.  This means "[t]he power of the court to revoke [the] sentence of probation for violation of a condition of probation, and to impose another sentence, extend[ed] beyond the expiration of the term of probation [May 31, 2021,] for any period reasonably necessary for the adjudication of matters arising before its expiration."  18 U.S.C. § 3565(c).  The Court therefore had jurisdiction to revoke probation and impose another sentence, during any period reasonably necessary for adjudicating matters that occurred before the term expired.

Here, Defendant proffers that on June 8, 2021, he placed himself back on the Court's calendar with the help of counsel.[5]  At the next hearing, on June 17, 2021, Defendant appeared via telephone, and the Court recalled the warrant and referred the matter to the U.S. Probation Office for review.  (ECF No. 39.)  The Court set a status hearing for July 15, 2021.  (Id.)  On July 2, 2021, the Court ordered a warrant issue, to be held until July 15, 2021, based on a petition for violation of probation, alleging that Mr. Brown violated the terms of his probation by failing:

---

[5]   The Court has an electronic means by which defendants can place themselves on calendar when a warrant issues, but notes that the warrant is not recalled until the defendant actually appears in court.  This procedure was established to provide ease of use for defendants and possible avoidance of an arrest, but the Court, through application of the procedure, recognized that defendants who called often did not appear for their hearing even when requested through this means.  Hence, warrants remain unrecalled until an actual appearance, as was the case here.

(1) to pay his financial obligation by March 30, 2020; (2) to appear in Court for a review hearing on May 20, 2021; (3) to obey all laws as he was arrested for evading a peace officer and for possession of a controlled substance; and (4) to provide proof of completion of substance abuse treatment as ordered by the Court.  (ECF No. 40.)  The Court finds these events occurred during a period of time reasonably necessary for adjudication of matters that occurred before the term of probation expired.  The Court therefore concludes Defendant's motion to dismiss shall be denied as to the challenge that the May 21, 2021 bench warrant was insufficient under 18 U.S.C. § 3565(c).

Now, the Court considers whether fugitive tolling provides an additional basis for jurisdiction, even if the Court's May 21, 2021 bench warrant did not satisfy the requirements of 18 U.S.C. § 3565(c).

### B. The Fugitive Tolling Doctrine is Still the Law in the Ninth Circuit and Extended Defendant's Term of Probation Until July 12, 2021

In addition to the challenge that was the subject of  the Court's determination in Section A pertaining to the May 21, 2021 bench warrant, Defendant argues that although the Court ultimately issued a warrant for a probation violation, it did not do so until July of 2021, and thus the Court did not issue a warrant or summons sufficient to satisfy 18 U.S.C. § 3565(c) prior to the expiration of Defendant's term of probation, and lacked jurisdiction.  The Government's first primary response in opposition was that fugitive tolling applied from the time Defendant failed to file a probation status report on May 6, 2021.  (ECF No. 53.)  The Government submits fugitive tolling is still good law in the Ninth Circuit, and applies to this action.  The Court agrees with the Government for the reasons explained herein, and finds fugitive tolling applicable to the facts of this case and provides an additional basis for meeting the requirements of 18 U.S.C. § 3565(c).

In Pocklington, the Ninth Circuit held the delayed revocation statute sets forth a jurisdictional rule, and if the Court does not issue a warrant or summons on the basis of an allegation of a probation violation prior to the expiration of the term of probation, the Court then

/ / /

1 lacks jurisdiction to thereafter revoke the probation:

> The unmistakable language of § 3565(c)—defining the "*power of the court* to revoke a sentence of probation"—could hardly speak more clearly to the district court's jurisdiction-defining "*power* to adjudicate the case." *Cotton*, 535 U.S. at 630, 122 S.Ct. 1781. We have characterized the statute as jurisdictional, explaining that § 3565(c) "allows the court to retain jurisdiction" if its requirements are met. *United States v. Castro–Verdugo*, 750 F.3d 1065, 1070 (9th Cir.2014). In the same vein, we described identical language in the companion provision dealing with supervised release, *see* § 3583(i), as "extend[ing] the jurisdiction of the federal court." *United States v. Garrett*, 253 F.3d 443, 449 (9th Cir.2001); *see also United States v. Vargas–Amaya*, 389 F.3d 901, 907 (9th Cir.2004). Our precedent is aligned with that of the Second and Third Circuits, which both treat § 3583(i) as jurisdictional. *United States v. Merlino*, 785 F.3d 79, 81 (3d Cir.2015); *United States v. Janvier*, 599 F.3d 264, 267 (2d Cir.2010).

11 Pocklington, 792 F.3d at 1039–40.  Defendant submits that in light of the holding in Pocklington

12 making clear the statute is jurisdictional, the Court should consider the Supreme Court's holding

13 in Bowles in conjunction with Pocklington to find the fugitive tolling doctrine to be invalid.

14      In Bowles, the Supreme Court found that "[b]ecause Congress specifically limited the

15 amount of time by which district courts can extend the notice-of-appeal period in § 2107(c), that

16 limitation is more than a simple 'claim-processing rule[,]' [a]s [the Court has] long held, when

17 an 'appeal has not been prosecuted in the manner directed, within the time limited by the acts of

18 Congress, it must be dismissed for want of jurisdiction.' "  Bowles v. Russell, 551 U.S. 205, 213,

19 127 S. Ct. 2360, 2366, 168 L. Ed. 2d 96 (2007) (quoting United States v. Curry, 47 U.S. 106, 113

20 (1848)).  Bowles failed to file the notice of appeal in accordance with the statute, and therefore

21 the Court of Appeals was deprived of jurisdiction.  Id.  Because the error was "one of

22 jurisdictional magnitude," the Supreme Court found Bowles could not "rely on forfeiture or

23 waiver to excuse his lack of compliance with the statute's time limitations."  Id.  The Supreme

24 Court stated it was "mak[ing] clear that the timely filing of a notice of appeal in a civil case is a

25 jurisdictional requirement."  Id. at 214.  The Supreme Court held that because it "has no

26 authority to create equitable exceptions to jurisdictional requirements," previous caselaw was

27 overruled to the "extent they purport to authorize an exception to a jurisdictional rule," and held

28 the use of the unique circumstances doctrine is illegitimate.  Id.

The Ninth Circuit noted it was uncontested by the government that under Supreme Court authority, the courts have "no authority to create equitable exceptions to jurisdictional requirements." Pocklington at 1040 (quoting Bowles, 551 U.S. at 214). "That wiggle room falls within Congress's province. Here, Congress has prescribed a specific procedure for extending the jurisdiction of the district court beyond the expiration of probation: the issuance of a 'warrant' or 'summons' before the probation period expires." Pocklington, 792 F.3d at 1040.

"A defendant is in fugitive status when he fails to comply with the terms of his [probation]." United States v. Grant, 727 F.3d 928, 930 (9th Cir. 2013) (quoting United States v. Watson, 633 F.3d 929, 931 (9th Cir. 2011)) (alteration in citing source); see also United States v. Murguia–Oliveros, 421 F.3d 951, 953 (9th Cir.2005) ("We publish this opinion to clarify what constitutes 'fugitive status' for purposes of tolling a term of supervised release. Murguia-Oliveros argues that he could not become a fugitive merely by failing to comply with the terms of his supervised release. We disagree."). "[F]ugitive status tolls the length of time a defendant is ordered to serve probation." Grant, 727 F.3d at 930.

The Government acknowledges Pocklington and Section 3565(c) require the issuance of a warrant or summons based on probable cause and supported by oath or affirmation be entered prior to the expiration of the term of probation, and that Section 3565(c) is jurisdictional. (Opp'n 4.) However, the Government submits that as this Court has previously held, the fugitive tolling doctrine can "coexist" with Pocklington. See United States v. Ertell, No. 1:11-CR-00278-SAB, 2016 WL 7491630, at *6–8 (E.D. Cal. Dec. 29, 2016); United States v. Warren, No. 3:91-72-SI, 2016 WL 3457161, at *3–4 (D. Or. June 23, 2016), aff'd, 708 F. App'x 472 (9th Cir. 2018); United States v. Fields, No. 6:13-cr-0001-MJS, 2016 WL 6611550, at *3 (E.D. Cal. November 9, 2016); United States v. Abraham, No. 1:12-CR-00163-BAM, 2016 WL 4466001, at *1 (E.D. Cal. August 23, 2016). The Government emphasizes "[t]he fugitive tolling doctrine rests on the principle that '[a] person on supervised release should not receive credit against his period of supervised release for time [when], by virtue of his own wrongful act, he was not in fact observing the terms of his supervised release.' " Watson, 633 F.3d 929, 931–32 (9th Cir. 2011) (quoting Murguia–Oliveros, 421 F.3d at 954) (alteration in quoting source).

17

1    The Government submits that the term was tolled from at least May 6, 2021.  See United
2    States v. Delamora, 451 F.3d 977, 978 (9th Cir.2006) ("We hold today that a defendant's term of
3    supervised release is tolled from the time that he absconds from supervision until the time he is
4    found by federal authorities."); United States v. Ignacio Juarez, 601 F.3d 885, 890 (9th Cir.
5    2010) ("Fugitive tolling begins when the defendant absconds from supervision—making it
6    impossible for the Probation Office to supervise his actions—and ends when federal authorities
7    are capable of resuming supervision . . . begins when the defendant becomes a fugitive, not at the
8    later time when a warrant is issued for his apprehension.").

9    Despite Pocklington, the Government emphasizes that for over 40 years, the Ninth
10   Circuit has consistently held that periods of fugitive status are not counted within the "term of
11   probation."  The first case to articulate the fugitive tolling doctrine by the Ninth Circuit was
12   Nicholas v. United States, 527 F.2d 1160 (9th Cir. 1976).  The Government emphasizes the
13   Ninth Circuit has routinely upheld the fugitive tolling doctrine, applying it to supervised release,
14   which the Government proffers is governed by statutes "strikingly similar" to those that govern
15   probation.  See United States v. Crane, 979 F.2d 687, 691 (9th Cir. 1992) (defendant's term of
16   supervised release was tolled while he was a fugitive); Ignacio Juarez, 601 F.3d at 888  (same).
17   The Government proffers re-affirmances employed the same such tolling mechanism, Delamora,
18   451 F.3d at 980-81, and that the Ninth Circuit has similarly applied the doctrine in cases
19   involving probation.  United States v. Day, 15 F. App'x 509, 510 (9th Cir. 2001) ("Thus, the
20   court still had authority as of June 6, 1995 to revoke probation and supervised release . . . Day's
21   fugitive status thereafter tolled the period of release and probation until her eventual capture on
22   July 26, 2000 and resentencing on October 13, 2000."); United States v. Narviez, 129 F.3d 129
23   (9th Cir. 1997) ("Vargas' probation term did not run while he was a fugitive from justice.").  The
24   Government further submits that in Grant, the Ninth Circuit explicitly confirmed that the fugitive
25   tolling doctrine remains valid and applies to probation cases in exactly the same fashion it
26   always has. 727 F.3d at 930.

27   Defendant emphasizes that in Pocklington, the Ninth Circuit cited to Bowles and re-
28   affirmed its holding that it has "no authority to create equitable exceptions to jurisdictional

1   requirements," and that the Ninth Circuit declined to resolve what it acknowledged as "tension"

2   between Bowles and its cases involving the fugitive tolling doctrine, only because the fugitive

3   tolling doctrine was not at issue in Pocklington and because the defendants in those fugitive

4   tolling cases, "conceded the general validity of the fugitive tolling doctrine without reference to

5   Bowles." 792 F.3d at 1040 n.1. Here, Defendant notes the Government has put the fugitive

6   tolling doctrine squarely at issue, and Defendant does not concede the validity of such a legally-

7   dubious doctrine following Bowles. The Defendant further replies that even if this Court rejects

8   Supreme Court and Ninth Circuit precedent, and continues to apply the legally-dubious doctrine

9   of fugitive tolling, it is nonetheless inapplicable here, as the failure of an attorney to file a

10  probation report does not make a person a fugitive because that person has no power to compel

11  the attorney's action or inaction.

12         The Court finds the Defendant has put forth cogent arguments with a reasonable basis to

13  request this Court to consider the issue in light of the language in Pocklington and Bowles, and

14  the fact the Ninth Circuit acknowledged the issues were not raised in Watson, Ignacio-Juarez,

15  nor in Pocklington itself. 792 F.3d at 1040 n.1. The Court is not convinced it is appropriate to

16  depart from its prior holding, and the holdings from other judges in this district, as well as the

17  decisions of the courts of appeal in different circuits that have addressed the issue of fugitive

18  tolling post-Bowles and Pocklington, including the Fifth Circuit's recent decision to adopt the

19  doctrine and join the majority of courts of appeal that have considered the issue of fugitive

20  tolling. The Court still finds consistent with its previous order that addressed this question, that

21  fugitive tolling can reasonably coexist under Pocklington. There is an abundance of legal

22  support that counsels this Court against assuming the state of the law mandates overturning the

23  fugitive tolling doctrine.

24         Again, this Court considered the issue post-Pocklington. See Ertell, 2016 WL 7491630,

25  at *7 ("Based on the language in Ninth Circuit decisions, the Court finds that with the

26  application of the two-step timing analysis for probation revocation, Defendant's term of

27  probation does not expire until at least January 2017, and only then should the delayed

28  revocation provision, 18 U.S.C. § 3565(c), be consulted. . . the Court does not need to consult 18

U.S.C. § 3565(c), and the fact that Section 3565(c) is jurisdictional does not result in the fugitive tolling doctrine being inapplicable to unsupervised probation [and] tolling doctrine can coexist with Section 3565(c).").  The court considered the "tension" language in Pocklington.  Id. at *6. The Court cited to Fields, which was decided shortly before.  In Fields, the court found no basis to divert from the long-standing doctrine in the Ninth Circuit:

> In this circuit, resolution of the above issue is as simple and straight-forward as the issue: The Ninth Circuit Court of Appeals continues to apply the fugitive tolling doctrine. See United States v Grant, 727 F. 3d at 930; see also United States v. Abraham, 2016 U.S. Dist. LEXIS 113398 (E.D. Cal. Aug. 22, 2016).
>
> Although Grant did not specifically address the 18 U.S.C. 3565(c) language at issue here, Ninth Circuit cases have upheld the doctrine in the face of essentially identical language in 18 U.S.C 3583(i) dealing with supervised release. In an unpublished decision, United States v Nuno-Garza, 365 Fed Appx. 806 (2010), the Ninth circuit rejected a claim that the fugitive tolling doctrine was rendered invalid by the statutes' omission of reference to it: "Although Nuno-Garza asserts the doctrine of fugitive tolling is invalid as a matter of law, this court has recognized the doctrine's validity on multiple occasions. [Citations] We are bound by those decisions." Id. at 807; see also U.S. v. Ignacio Juarez, 601 F. 3d 885 (9th Cir. 2010) and United States v Ahmadzai, 723 F. 3d 1089 (9th Cir 2013).
>
> This Court, of course, is similarly bound by those decisions.
>
> This Court also adopts the rationale behind the doctrine as expressed in related contexts: To hold otherwise would "reward those who flee from bench warrants and maintain their fugitive status until the expiration of their original term of supervised release." U.S. v. Crane, 979 F. 2d 687, 691 (9th Cir. 1992).

Fields, 2016 WL 6611550, at *3.  The Fields decision also expressly acknowledged the "tension" language in Pocklington.  Id. at *2 n.3; see also Warren, 2016 WL 3457161, at *4  ("Until such time as the Supreme Court or the Ninth Circuit resolves that tension, this Court remains bound by the Ninth Circuit case law recognizing fugitive tolling."), aff'd, 708 F. App'x 472 (9th Cir. 2018); Abraham, 2016 WL 4466001, at *2 ("While the meaning of silence in the underlying statute makes it difficult to interpret Congress' views on the fugitive tolling statute, this Court ultimately looks to Ninth Circuit law, which continues to endorse the fugitive tolling doctrine. Specifically, the Ninth Circuit applied the fugitive tolling doctrine in the probation context in United States v. Grant, 727 F.3d 928 (9th Cir. 2013).  While it did not specifically address the

1    Sentencing Reform Act, the Court's holding made clear that the fugitive tolling doctrine was still
2    good law.").

3          Defendant acknowledges these cases but argues the courts did not consider all aspects of
4    the previous decisions by the Ninth Circuit in relation to the noted tension.  Defendant nor the
5    Government appear to have addressed recent discussion of fugitive tolling in other circuits.

6          Perhaps most significantly, is the Third Circuit's decision in United States v. Island, 916
7    F.3d 249, 255–56 (3d Cir. 2019), cert. denied, 140 S. Ct. 405, 205 L.Ed.2d 239 (2019).  Before
8    Island, as cited in Pocklington, the Third Circuit in Merlino concluded that "§ 3583(i) is in fact
9    jurisdictional," and then stated it is "thus not subject to equitable tolling."  United States v.
10   Merlino, 785 F.3d 79, 83–86 (3d Cir. 2015).  The Merlino court relied on Bowles, as well as
11   Dolan v. United States, 560 U.S. 605, 610, 130 S.Ct. 2533, 177 L.Ed.2d 108 (2010):

> We now turn to the Government's argument that § 3583(i) is
> subject to equitable tolling because it is not a jurisdictional
> provision. We assess this position in light of *Dolan v. United*
> *States,* 560 U.S. 605, 610, 130 S.Ct. 2533, 177 L.Ed.2d 108
> (2010), in which the Supreme Court provided guidelines for the
> classification of federal statutory deadlines, the consequences for
> noncompliance with such deadlines, and the availability of tolling.
> The *Dolan* framework divides federal statutory deadlines into three
> broad categories, based in large part on the "statutory language, [ ]
> the relevant context, and [ ] what they reveal about the purposes
> that a time limit is designed to serve." *Id.* First, the Court
> acknowledged that certain deadlines are "jurisdictional," in the
> sense that they "prevent[ ] the court from permitting or taking the
> action to which the statute attached the deadline. The prohibition is
> absolute. The parties cannot waive it, nor can a court extend that
> deadline for equitable reasons." *Id. See, e.g., Bowles v.*
> *Russell,* 551 U.S. 205, 208–14, 127 S.Ct. 2360, 168 L.Ed.2d 96
> (2007) (no equitable relief for defendant who missed appellate
> filing deadline in reliance on district court's erroneous order).
> Second, the Court identified procedural "claims-processing" rules
> that "do not limit a court's jurisdiction, but rather regulate the
> timing of motions or claims brought before the court. Unless a
> party points out to the court that another litigant has missed such a
> deadline, the party forfeits the deadline's protection." *Dolan,* 560
> U.S. at 610, 130 S.Ct. 2533. And third, the Court characterized
> some deadlines as "time-related directive[s]" that are "legally
> enforceable but do[ ] not deprive a judge or other public official of
> the power to take the action to which the deadline applies if the
> deadline is missed." *Id.* at 611, 130 S.Ct. 2533.

27   Merlino, 785 F.3d at 83–86.

28         In Island, the Third Circuit discussed the fact that Section 3583(i) had been found in

21

1   Merlino to be jurisdictional and not subject to equitable tolling.  The Third Circuit concluded its

2   holding in Merlino did not foreclose the fugitive tolling doctrine, and that a defendant does not

3   serve his term while a fugitive; a part of a fugitive defendant's term remains to be served; and

4   thus during the remainder of that supervised release term, the district court correspondingly has

5   jurisdiction.  The Court excerpts its discussion in full given it appears significant the relation

6   between Merlino and Pocklington, and supports the Court's determination here that it would be

7   improper to assume the doctrine cannot survive in the Ninth Circuit post-Pocklington:

> We find unconvincing the reliance of Island and the dissent
> on *Cole* to contend imprisonment is the only context in which
> supervised release may be tolled. We found "persuasive Cole's
> argument that the canon of *expressio unius est exclusio
> alterius* suggests that where Congress has explicitly allowed for
> tolling only when the defendant is imprisoned on another charge, it
> does not intend for district courts to toll supervised release under
> any other circumstance." 567 F.3d at 115. The First Circuit
> similarly depended on the *expressio unius* canon in rejecting the
> fugitive tolling doctrine. *See Hernández-Ferrer*, 599 F.3d at 68.
> But as noted, Congress explicitly laid out how imprisonment and
> deportation would affect the running of a supervised release term.
> We accordingly inferred in *Cole* that in addressing deportation and
> treating it as a condition of supervised release, Congress
> determined tolling should not then apply. But Congress did not
> address at all whether tolling principles should apply when a
> defendant is fugitive from the court's supervision.
>
> Indeed, Congress was silent on the question. While the dissent
> suggests that silence counsels in favor of proscribing fugitive
> tolling, we note, as some of our sister Circuits have, "[t]he normal
> rule of statutory construction is that if Congress intends for
> legislation to change the interpretation of a judicially created
> concept" such as the one that a defendant cannot profit from his
> misdeeds, "it makes that intent specific. *Midlantic Nat. Bank v.
> New Jersey Dep't of Env. Protection*, 474 U.S. 494, 501, 106 S.Ct.
> 755, 88 L.Ed.2d 859 (1986); *see Barinas*, 865 F.3d at 109 ("[W]e
> typically expect a clearer expression of an intention to override
> such longstanding precepts as the principle that a fugitive should
> not profit by his unlawful or contumacious conduct."); *Buchanan*,
> 638 F.3d at 456 ("We find no indication to suggest that Congress
> considered the issue and intended to preclude the judicially created
> doctrine of fugitive tolling in the supervised release
> context."); *cf. Young v. United States*, 535 U.S. 43, 52, 122 S.Ct.
> 1036, 152 L.Ed.2d 79 (2002) (drawing "no negative inference from
> the presence of an express tolling provision" in one section of the
> Bankruptcy Code "and the absence of one in" another section,
> where the differing treatment "would be quite reasonable").
> Recognizing tolling only in the single case of imprisonment would
> in fact, as our sister Circuits have explained, "impede achievement
> of Congress's stated goals for supervised release." *Barinas*, 865

22

F.3d at 109.

> Our reasoning in *Cole* accords with the premises of fugitive tolling and reflects the distinction between defendants who deliberately defy the conditions of supervised release and those who leave the jurisdiction not on their own but at the government's order. *Accord Barinas*, 865 F.3d at 109–10 (describing the running of a term during deportation as a "far cry from the circumstances in which [the defendant] was to remain in the United States for supervision and instead fled, in violation of the conditions imposed on him"); *Buchanan*, 638 F.3d at 457 (explaining fugitive tolling is "distinguishable" from the decision not to toll during deportation "because the fugitive-defendant's absence arises from his own misconduct. The same cannot be said about a defendant who has been removed from the country by government order"). *Cole* confirms a defendant cannot profit from his own misdeeds; the fugitive tolling doctrine reflects that principle.

> Finally, the dissent contends 18 U.S.C. § 3583(i) precludes fugitive tolling . . .

> . . .We have held "§ 3583(i) is in fact jurisdictional and thus not subject to equitable tolling," *United States v. Merlino*, 785 F.3d 79, 86 (3d Cir. 2015), but that holding does little to help Island because fugitive tolling is not based in Section 3583(i)'s jurisdictional grant. Section 3583(i) concerns the extension of a court's jurisdiction, but it is undisputed that a court has jurisdiction during the defendant's service of his supervised release term. We here begin with the question whether Island in fact served his supervised release term. Because, as we have explained, a defendant does not serve his term while fugitive, part of a fugitive defendant's term remains to be served. During the remainder of that supervised release term, the district court correspondingly has jurisdiction. As the Second Circuit has recognized, it is not "§ 3583(i) itself" which "authoriz[es] the tolling of the supervised-release period based on the defendant's fugitive status." *United States v. Barinas*, 865 F.3d 99, 109 (2d Cir. 2017). Instead, as discussed, "such tolling is consistent with the traditional principle that an absconder should not benefit from his fugitivity and is consistent with Congress's sentencing scheme of supervision to facilitate the defendant's transition to a law-abiding life in free society." *Id.*

Island, 916 F.3d at 255–56.

As noted in Island, the First Circuit has rejected the fugitive tolling doctrine.  See United States v. Hernandez-Ferrer, 599 F.3d 63 (1st Cir. 2010).  However, it appears that it is the *only* court of appeal to have done so.  Indeed, the Fifth Circuit recently addressed fugitive tolling as an issue of first impression.  United States v. Cartagena-Lopez, 979 F.3d 356, 359 (5th Cir. 2020) ("This appeal asks whether Cartagena-Lopez's status as a fugitive tolled his period of

1  supervision, an issue of first impression in this Circuit.  We hold that the fugitive tolling doctrine

2  applies to supervised release.").  The Fifth Circuit noted that, "[i]n doing so, we join the Second,

3  Third, Fourth, and Ninth Circuits, which have adopted the doctrine, and part ways with the

4  First."  Id. at 359 n.1, 2 (citing United States v. Barinas, 865 F.3d 99 (2d Cir. 2017); Island, 916

5  F.3d 249; United States v. Buchanan, 638 F.3d 448 (4th Cir. 2011); Murguia-Oliveros, 421 F.3d

6  95; Hernandez-Ferrer, 599 F.3d 63).

7      The Fifth Circuit considered the question of whether the language in Section 3583(i)

8  forecloses fugitive tolling:

> First, we consider whether 18 U.S.C. § 3583(i) forecloses the
> fugitive tolling doctrine, as some have contended. Under § 3583(i),
> a court's power to revoke a term of supervised release "extends
> beyond the expiration of the term of supervised release for any
> period reasonably necessary for the adjudication of matters arising
> before its expiration if, before its expiration, a warrant or summons
> has been issued on the basis of an allegation of such a violation."
> In other words, a court can hold a revocation hearing within a
> reasonable time after the supervised release term ends as long as
> the petition was filed while the defendant was still on supervision.
> Though we have described § 3583(i) as "a tolling provision," it
> does not actually extend the end date of the defendant's supervised
> release term. Rather, it extends the district court's power to revoke
> a defendant's supervised release based on conduct that occurred
> during the period of supervision.  The statute is silent when it
> comes to calculating the end date of a supervised released term and
> it does not address whether and when a term can be tolled. We
> therefore disagree that § 3583(i) bars the fugitive tolling doctrine.
> The statute simply provides no guidance here.

19  Cartagena-Lopez, 979 F.3d at 360–61 (footnotes and citations omitted).  The Court finds these

20  decisions of the courts of appeal support the principles and reasoning that were expressed in the

21  earlier decisions, and counsel against assuming the doctrine no longer survives.  See Ertell, 2016

22  WL 7491630; Fields, 2016 WL 6611550, at *3.

23      Like the Ninth, the Fifth Circuit emphasized the policy goals underlying the doctrine that

24  are in line with Congressional intent behind the entirety of the statutory scheme:

> To the contrary, the fugitive tolling doctrine furthers the purposes
> of supervised release. While a statute's text is supreme, its purpose
> can inform "which of various textually permissible meanings
> should be adopted." Supervised release aims to rehabilitate
> defendants and reduce recidivism by easing the transition from
> prison to the community. These benefits are only realized if
> defendants are subject to supervision. As the four circuits to adopt

> it so far recognize, by ensuring that defendants participate in their supervision, the fugitive tolling doctrine protects the statutory scheme of post-confinement monitoring that Congress established in the Sentencing Reform Act.

Cartagena-Lopez, 979 F.3d at 363–64 (citations and footnotes omitted).  Likewise, the Fourth Circuit recently reaffirmed the fugitive tolling doctrine under § 3583(i), again emphasizing the policy goals behind the doctrine.  See United States v. Thompson, 924 F.3d 122, 128 (4th Cir. 2019) (quoting United States v. Buchanan, 638 F.3d 448, 455 (4th Cir. 2011) ("Fugitive tolling, in other words, prevents a situation in which we 'reward an absconder for his misconduct,' allowing a fugitive defendant to run out the clock on his release term while refusing to submit to supervision.")); see also Buchanan, 638 F.3d at 455 ("Having considered the foregoing authorities, we agree with the district court and the Ninth Circuit and hold that a term of supervised release is tolled when a defendant absconds from supervision.  As noted, the supervised release term constitutes part of the original criminal sentence, and the congressional intent is for defendants to serve their full release term.").

Additionally, in 2017, the Second Circuit upheld the fugitive tolling doctrine, also referencing the policy goals, and expressly finding that to agree with the First Circuit "would impede achievement of Congress's stated goals for supervised release," and noting courts "typically expect a clearer expression of an intention to override such longstanding precepts as the principle that a fugitive should not profit by his unlawful or contumacious conduct":

> We agree. While we do not read § 3583(i) itself as authorizing the tolling of the supervised-release period based on the defendant's fugitive status, we conclude that such tolling is consistent with the traditional principle that an absconder should not benefit from his fugitivity and is consistent with Congress's sentencing scheme of supervision to facilitate the defendant's transition to a law-abiding life in free society.
>
> Although the First Circuit in *Hernández* concluded that the courts lack authority to rule that a period of supervised release has been tolled by the defendant's fugitive status, *see* 599 F.3d at 67-70, based largely on the fact that another statutory section provides that "[a] term of supervised release does not run during any period in which the person is *imprisoned*" for another crime for 30 or more consecutive days, 18 U.S.C. § 3624(e) (emphasis added), we are unpersuaded. We do not interpret § 3624(e)'s provision for the tolling of supervised release when the defendant is "imprisoned" as evincing congressional intent that a defendant who absconded from

> supervised release should be treated as having performed his supervised-release obligations during the period in which he was a fugitive. *Accord Buchanan*, 638 F.3d at 455-57; *United States v. Murguia-Oliveros*, 421 F.3d 951, 953 (9th Cir. 2005), *cert. denied*, 546 U.S. 1125, 126 S.Ct. 1108, 163 L.Ed.2d 918 (2006). Such treatment would impede achievement of Congress's stated goals for supervised release. And we typically expect a clearer expression of an intention to override such longstanding precepts as the principle that a fugitive should not profit by his unlawful or contumacious conduct.

United States v. Barinas, 865 F.3d 99, 109 (2d Cir. 2017).

Likewise, the Ninth Circuit has also repeatedly emphasized the policy rationales behind the fugitive tolling doctrine, lending additional support for the Court's conclusion to not presume the Ninth Circuit would overrule the doctrine.  See Murguia-Oliveros, 421 F.3d at 953–54 ("we should not reward those who violate the terms of their supervised release and avoid arrest until after the original term expires [and] [t]olling is necessary to prevent this result."); Fields, 2016 WL 6611550, at *3 (citing Crane, 979 F. 2d at 691).

Indeed, a recognition of tension does not mean irreconcilable conflicts in the various legal principles and considerations involved.  For all the above reasons, the Court finds the fugitive tolling doctrine is still applicable to 18 U.S.C. § 3565(c).  The Court now turns to consider when a period of fugitive tolling began in this case, if at all.

      1.    Fugitive Tolling Began May 6, 2021, with the Failure to File a Probation Report

Neither party appeared to address the issue of the Government's burden to establish the facts pertaining to the period of fugitive tolling, perhaps because it is presumed.  The Ninth Circuit, in an unpublished opinion, stated it was the Government's burden to do so, a holding that has been utilized by the Fourth Circuit.  United States v. Williams, 520 F. App'x 617, 618–19 (9th Cir. 2013) ("In the revocation proceedings below, it was the government's burden to prove the facts surrounding both periods of fugitive tolling.") (citing United States v. Sumner, 226 F.3d 1005, 1010 (9th Cir.2000)); United States v. Thompson, 924 F.3d 122, 128 (4th Cir. 2019) (same) (citing Williams, 520 F. App'x at 618).

The Government argues that because Defendant's probation was unsupervised and the Court ordered him to file a status report on May 6, 2021, the filing of that status report was the

functional equivalent of the probationer keeping in touch with a probation officer and the Court, and therefore he became a fugitive when the report was not filed.  See Grant, 727 F.3d at 932–33 (defendant became fugitive by failing to submit written reports and failing to contact probation officer); Watson, 633 F.3d at 932 (defendant became a fugitive by failure to notify probation officer of change of residence and failing to submit monthly reports); Delamora, 451 F.3d at 980-81 (defendant became a fugitive by failing to properly report to supervising officer).  The Government submits that using May 6, 2021, as the initial date of his fugitive status, Defendant's remaining 25 days of probation (May 6, 2021 to May 31, 2021) was "tolled," and the probation term was extended for 25 days, and Defendant remained on probation for an additional 25 days after he returned to the Court's supervision on June 17, 2021, and the term of probation expired on July 12, 2021.  Because the Court issued a warrant on July 2, 2021, before the expiration of Defendant's probation term, the Government argues the Court has jurisdiction to consider revocation.  The Court agrees.

First, while Defendant argued he cannot be held liable for the failure to file a report, the Court disagrees and finds the requirement to file a probation report, and to appear, were conditions placed on the Defendant, not on Defendant's counsel.  It does not appear under the state of the law that the failure to file the report here *necessarily* equates to a conclusion of a probation violation or that Defendant became a fugitive on such date.  Nonetheless, there is ample support for the Court to conclude fugitive tolling began when Defendant failed to file the probation report, as a failure to file a report can be the trigger date for a period of fugitive tolling to begin in the Ninth Circuit.

The Ninth Circuit has held in the context of the fugitive disentitlement doctrine, a doctrine with a drastic impact on a defendant's appeal rights, a failure to report does not make one a fugitive for purpose of that doctrine, at least not without a showing that the defendant *fled or hid* from the jurisdiction of the court:

> The record does not establish that Gonzalez was ever a fugitive at all, just that he didn't comply with his conditions of probation.  The United States has not suggested that he is in any way a fugitive now.  The purposes of the fugitive disentitlement doctrine would not be furthered by applying it here.  The doctrine does not apply

to an appellant just because he has not reported as directed to the probation office, in the absence of a showing that he has fled or hidden himself from the jurisdiction of the court.

United States v. Gonzalez, 300 F.3d 1048, 1051 (9th Cir. 2002). However, as the parties recognize, the Ninth Circuit has issued an "opinion to clarify what constitutes 'fugitive status' for purposes of tolling a term of supervised release." Murguia-Oliveros, 421 F.3d at 953 ("Murguia-Oliveros argues that he could not become a fugitive merely by failing to comply with the terms of his supervised release. We disagree."). The Ninth Circuit explained the circumstances therein:

> Murguia-Oliveros engaged in similar conduct. He departed the place he was authorized by the terms of his release to be. The terms of his release authorized him to be outside the United States, but he entered the United States, where he was not authorized to be, and failed to contact his probation officer as required. In so doing, Murguia-Oliveros clearly violated the terms of his supervised release. Murguia-Oliveros was then ordered by his probation officer to report, but did not do so. We therefore hold that Murguia-Oliveros became a fugitive because he effectively absconded from serving the terms of his supervised release.
>
> In arguing he was not a fugitive from his supervised release, Murguia-Oliveros relies on authority dealing with the fugitive disentitlement doctrine that applies to criminal appeals . . . For the fugitive disentitlement doctrine to apply in a criminal appeal, we require a further showing that the defendant has fled or has hidden from the jurisdiction of the court. *Id.* The reason is that escape from custody is inconsistent with the pursuit of judicial remedies and constitutes a voluntary waiver of any pending judicial review of a criminal conviction. *See Antonio-Martinez v. INS,* 317 F.3d 1089, 1091 (9th Cir.2003). Dismissal of a defendant's appeal from a conviction is a severe sanction that courts should not lightly impose. *Id.*
>
> Murguia-Oliveros thus argues that failure to comply with the terms of his release should not result in the tolling, or extension, of his release period because tolling is a similarly severe sanction. It is not.

Murguia-Oliveros, 421 F.3d at 953–54. The Ninth Circuit explained the distinction, and the rationales behind the doctrine, primarily the avoidance of rewarding a fugitive: "We deal here with a far less severe sanction, and one that is necessary to the purpose of supervised release . . . we should not reward those who violate the terms of their supervised release and avoid arrest until after the original term expires [and] [t]olling is necessary to prevent this result." Id. at 954–

55; see also United States v. Bristow, No. 89 CR 0268 J, 2007 WL 2345037, at *4 (S.D. Cal. Aug. 16, 2007) (it was "not necessary for the Government to demonstrate that Defendant fled or hid from the jurisdiction of the" court, and the doctrine would apply if the defendant absconded from the terms of supervised release) (citing Murguia-Oliveros, 421 F.3d at 953–54).

In Ignacio Juarez, the Ninth Circuit found the defendant absconded from supervision, making it impossible to supervise his actions, when the defendant failed to report within seventy-two hours of his move:

> Fugitive tolling begins when the defendant absconds from supervision-making it impossible for the Probation Office to supervise his actions-and ends when federal authorities are capable of resuming supervision. See Delamora, 451 F.3d at 978("[A] defendant's term of supervised release is tolled from the time that he absconds from supervision until the time he is found by federal authorities."). In this case, Juarez absconded from supervision when he moved to the United States and failed to advise the Probation Office of his whereabouts. We know that he was residing in the United States no later than August 31, 1993, and that he failed to report his change of address to the Probation Office within 72 hours. Thus, tolling began at the latest on September 3, 1993.

Ignacio Juarez, 601 F.3d at 890; see also United States v. Nuno-Garza, 365 F. App'x 806, 807 (9th Cir. 2010) ("Applying the doctrine of fugitive tolling to the facts of this case, Nuno-Garza became a fugitive when he absconded from supervision by changing his place of residence on March 25, 2004, without first notifying his probation officer, and in violation of the conditions of his supervised release."). Similarly, in Fields, the court found an earlier beginning date was possible based on a failure to report a law violation, but did not find such argument presented. See Fields, No. 6:13-CR-00001 MJS, 2016 WL 6611550, at *3 n.4 (E.D. Cal. Nov. 9, 2016) ("The Court finds that Defendant 'absconded' not later than when he failed to appear as ordered at the October 7, 2016, hearing. It might be argued that the tolling period began earlier, when, for example, Defendant failed to report his new law violation . . . that argument is not before the Court at this time.").

The Court finds the Government has met its burden of establishing Defendant became a fugitive on May 6, 2021, when he failed to file a probation report. As shown through various Ninth Circuit decisions, there does not need to be an extended time of absconding or violation of

29

the probation terms, and the facts surrounding the initial violation can be somewhat minimal, as long as there is a failure to comply with a term of probation that demonstrates an absconding from the supervision of the Court. Grant, 727 F.3d at 932–33 (defendant became fugitive by failing to submit written reports and failing to contact probation officer); Delamora, 451 F.3d at 980-81 (defendant became a fugitive by failing to properly report to supervising officer); Ignacio Juarez, 601 F.3d at 890 (defendant absconded from supervision, making it impossible to supervise his actions, when the defendant failed to report within seventy-two hours of his move); Nuno-Garza, 365 F. App'x at 807 ("Nuno-Garza became a fugitive when he absconded from supervision by changing his place of residence on March 25, 2004, without first notifying his probation officer, and in violation of the conditions of his supervised release."); Watson, 633 F.3d at 930 (Watson "concedes that he became a fugitive from federal supervision in October 1995, when he failed to notify his probation officer of his change in residence and stopped submitting required monthly reports."); United States v. Garcia-Ocampo, No. CR 99-0606GT, 2013 WL 324928, at *3 (S.D. Cal. Jan. 28, 2013) ("Since Mr. Garcia illegally reentered the United States during the term of his supervised release and failed to report to his probation officer within 24 hours, he failed to comply with the terms of his supervised release and effectively absconded from supervision."), aff'd, 527 F. App'x 600 (9th Cir. 2013).

Thus, the Court finds that fugitive tolling applies, and that the period of tolling began on May 6, 2021, when Defendant failed to file a probation report.[6]

2.    Tolling Extended the Defendant's Term of Probation Until July 12, 2021

Having rejected Defendant's arguments concerning the start date of the fugitive tolling period and determining the period of tolling began on May 6, 2021, the Court now turns to

---

[6] While Defendant argues the failure to file a probation report was not a wrongful act by the Defendant, again, the Court finds the obligation was placed directly on the Defendant, it was a condition of probation, and Defendant failed to comply with a condition of his probation by failing to file a probation report on May 6, 2021. Defendant concedes if fugitive tolling were to apply, it would have begun only begun on May 20, 2021, when Defendant failed to appear before the Court. The failure to appear is an additional probation violation that can provide a basis for establishing a period of fugitive tolling, but the failure to appear on May 20, 2021, does not negate the fact that Defendant violated his probation on May 6, 2021. If anything, the subsequent failure to appear evidences that the Defendant had in fact absconded from supervision and provides additional support for finding that the earlier failure to file the probation report was in fact the trigger date for when he became a fugitive under the caselaw in the Ninth Circuit. The obligation to report to the Probation Office is placed on the Defendant, and the Court will not place the burden of maintaining contact on the already overburdened Probation Office.

consider the length of the period of tolling.  While Defendant disagrees with the start date of
fugitive tolling, as highlighted by Defendant in supplemental briefing, the Government's
proffered method of calculating the period of tolling, is in agreement with the Defendant's
proffered method.  (ECF No. 70 at 5.)  The Government never submitted a response to the
supplemental briefing as to the calculation method, and thus for purposes of this motion, assumes
the parties' pronouncement of the manner of calculating the tolled period is correct, and even if it
weren't, that would only mean the tolled period extended further, and thus would not have a
determinative impact on the application of the doctrine to this case, at least based on the Court's
finding that the period of tolling began on May 6, 2021.

The Court briefly discusses the relevant caselaw.  Defendant directs the Court to the first
Ninth Circuit case that recognized fugitive tolling, Nicholas, 527 F.2d at 1162, emphasizing the
original language case includes the specific modifier of "the amount of time within" the
probation term.  Specifically, the Ninth Circuit stated: "we hold that the five-year probationary
period prescribed by section 3651 was extended by operation of law by the amount of time
within the five-year period during which a probationer, in violation of the terms of his probation,
and for whom an arrest warrant has issued, has voluntarily absented himself from the
jurisdiction."  527 F.2d at 1162.

Defendant acknowledges that in Delamora, the Ninth Circuit stated the rule in different
language: "We hold today that a defendant's term of supervised release is tolled from the time
that he absconds from supervision until the time he is found by federal authorities."  Delamora,
451 F.3d at 978.  Defendant submits this is not a correct pronouncement of the law, however,
and is not in fact what the Ninth Circuit actually did in that case, or what other Ninth Circuit
cases have held.  In calculating how much time fugitive tolling added to the supervision term, the
Ninth Circuit held as follows:

> Delamora became a fugitive when he stopped reporting to his
> probation officer and absconded from supervision.
> Under *Murguia-Oliveros,* the start of Delamora's flight, which
> corresponds with the February 23, 1998 bench warrant,
> commenced the tolling of his supervised release term. On that date,
> he had 265 days of supervision remaining before his term would
> have otherwise expired on November 14, 1998, because his

supervised release term began when he was released from prison on November 14, 1990.[3] Delamora was brought into federal custody on April 20, 2005, at which point the clock began running again. Delamora's supervised release term, then, did not actually expire until December 10, 2005, or 265 days from April 20, 2005. Because the Probation Department filed its petition to revoke supervised release on March 28, 2005, the district court had jurisdiction.

Id.  In other words, the Ninth Circuit held the fugitive tolling tolled the time period of 265 days, between when Delamora entered fugitive status until the expiration of his supervision term; it did not toll from the time Delamora entered fugitive status (on February 23, 1998), until he returned to the court's supervision (on April 20, 2005).  Therefore, because the 265-day period was added to the date on which Delamora returned to the court's supervision on April 20, 2005, and because the court issued the second warrant based on sworn allegations on March 28, 2005, before the supervised release term, as extended by fugitive tolling, set to expire on December 10, 2005, the district court retained jurisdiction to adjudicate the alleged violation of the supervised release, and the Ninth Circuit reversed.  Id.  Defendant also submits this manner of calculation is consistent with how the Ninth Circuit has applied tolling in other cases, specifically Murguia-Oliveros, 421 F.3d at 953-54, on which Delamora relied.[7]

Thus, while the Court makes no pronouncement as to the state of the law as to the calculation method, Defendant has sufficiently demonstrated the proffered method of calculation is supported by Ninth Circuit law, and the Government proffered the same method.  The Court accepts the method and applies it to the facts here.

Given the Court finds the period of fugitive status began on May 6, 2021, the Court finds Defendant's remaining 25 days of probation (May 6, 2021 to May 31, 2021) was tolled, and the probation term was extended for 25 days.  Defendant therefore remained on probation for an additional 25 days after he returned to the Court's supervision on June 17, 2021, and the term of probation expired on July 12, 2021.  Because the Court issued a warrant on July 2, 2021, before

---

[7]  In addition to proffering the same manner of calculation, the Court notes the Government additionally described Delamora as adding the 265 days to the period of probation, in line with the discussion above:  "Thus, a defendant on supervised release with an original expiration date of November 14, 1990, who absconded with 265 days remaining and was caught on April 20, 2005, had a new expiration date: December 10, 2005—265 days from return. Delamora, 451 F.3d at 980-81."  (ECF No. 53 at 6.)

the expiration of Defendant's probation term, the Court retained jurisdiction to consider revocation.  See, e.g., Grant, 727 F.3d at 930; Murguia–Oliveros, 421 F.3d at 953; Ertell, 2016 WL 7491630, at *6–8; Fields, 2016 WL 6611550, at *3.

Accordingly, the Court finds the fugitive tolling doctrine provides an additional basis for denying Defendant's motion to dismiss.

## V.

## CONCLUSION AND ORDER

For the above explained reasons, the Court finds the bench warrant issued on May 21, 2021, satisfied the requirements of 18 U.S.C. § 3565(c), and thus "[t]he power of the court to revoke [the] sentence of probation for violation of a condition of probation, and to impose another sentence, extend[ed] beyond the expiration of the term of probation [May 31, 2021,] for any period reasonably necessary for the adjudication of matters arising before its expiration." The Court therefore had jurisdiction to revoke probation and impose another sentence, during any period reasonably necessary for adjudicating matters that occurred before the term expired, and did so during such reasonable period.

The Court additionally finds that the fugitive tolling doctrine is still good law in the Ninth Circuit as applied to § 3565(c); that fugitive tolling extended Defendant's term of probation until July 12, 2021; and because the Court issued a warrant on July 2, 2021, before the expiration of Defendant's probation term, the Court retained jurisdiction to consider revocation.

Accordingly, IT IS HEREBY ORDERED that Defendant Roger L. Brown's motion to dismiss the petition for violation of probation (ECF No. 51) is DENIED.

IT IS SO ORDERED.

Dated:  __**September 14, 2022**__           _____

                                                        UNITED STATES MAGISTRATE JUDGE